IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| STEVE CLAUDY LAPITRE,<br><br>                    Petitioner,<br><br>  vs.<br><br>WILLIAMS LAPINSKAS,<br>Superintendent,<br><br>                    Respondent. | No. 3:19-cv-00168-JKS<br><br>MEMORANDUM DECISION |

Steve Claudy Lapitre, a state prisoner proceeding *pro se*, filed a Petition for a Writ of Habeas Corpus with this Court pursuant to 28 U.S.C. § 2254. Lapitre is in the custody of the Alaska Department of Corrections ("DOC") and incarcerated at Spring Creek Correctional Center. Respondent has answered, and Lapitre has replied.

I. BACKGROUND/PRIOR PROCEEDINGS

On August 12, 2005, Lapitre was charged with first- and second-degree murder, third-degree weapons misconduct, and fourth-degree misconduct involving a controlled substance in connection with an altercation and shooting at Chilkoot Charlie's in Anchorage. His girlfriend, Brittany Howard, was charged as a co-defendant with hindering prosecution in the first degree. Lapitre gave pretrial notice of his intent to rely on self-defense. In responding to a pretrial motion by the State, however, Lapitre wrote that he would not be claiming self-defense in order

-1-

to avoid the State's introduction of evidence that Lapitre had fired the same gun in a prior incident.

Lapitre proceeded to a jury trial on November 7, 2006. Because Lapitre successfully moved to sever the controlled-substance and weapons-misconduct charges,[1] the trial focused on the murder charges. On direct appeal of his conviction, the Alaska Court of Appeals laid out the following facts underlying the charges against Lapitre and the evidence presented at trial:

> The shooting occurred outside of a nightclub in Anchorage where Lapitre had been dancing in the club with his girlfriend, Brittany Howard, and Brown had been dancing with his girlfriend, Angela Button. There were essentially two eye-witness accounts offered at trial.
> A witness named Gary Swan testified that Lapitre was standing outside when Brown and Button came out of the club. Swan told the police that Lapitre made a derogatory remark to Brown, and he testified that Button then said to Brown, "Did you hear what he said?" Then Button and Brown retrieved their car, and Button drove up near the club. Brown got out and stood next to the car. Lapitre ran around the rear of the vehicle and hit Brown two to four times in the neck area. Then a shot rang out, and Brown fell back into the car. The incident unfolded so quickly that Swan believed that Lapitre must have had the gun in his hand when he was hitting Brown.
> Lapitre testified that Button almost hit him with the vehicle she was driving as he was walking away from the club. Brown then jumped out of the vehicle and made a derogatory remark to Lapitre, and Lapitre walked over to see if Brown had mistaken him for someone else. Lapitre testified that Brown then started hitting him, and that while they were fighting, Lapitre's handgun fell out of his holster. Both men went for the gun, and it discharged accidently while they were struggling.

*Lapitre v. State*, No. A-9974, 2010 WL 3606030, at *1 (Alaska Ct. App. Sept. 15, 2010).

At the close of evidence and after the parties had delivered closing arguments, Lapitre requested a self-defense instruction. The superior court declined the request, concluding that Lapitre had failed to present enough evidence to justify the instruction, that Lapitre had disavowed his notice of self-defense, and that the State would have been prejudiced if the untimely request were granted. The jury subsequently acquitted Lapitre of first-degree murder but convicted him of murder in the second degree. At sentencing, the superior court considered Lapitre's prior convictions, including his juvenile record, and the circumstances of the offense to conclude that Lapitre was a worst offender. The court sentenced Lapitre to a term of 99 years'

---

[1] Lapitre later pled no contest to the weapons misconduct charge.

imprisonment.

Through counsel, Lapitre appealed his conviction and sentence. According to Lapitre, the trial judge should have given a self-defense instruction at trial and erred at sentencing by relying on the grand jury testimony of Brown's girlfriend, who died before trial, and by adjudicating Lapitre a worst offender. The Court of Appeal unanimously affirmed the judgment and sentence in a reasoned, unpublished opinion issued on September 15, 2010. *Lapitre*, 2010 WL 3606030, at *7. Lapitre petitioned for hearing in the Alaska Supreme Court, which was denied without comment on February 2, 2011. Docket No. 11-11.

Lapitre then filed a *pro se* application for post-conviction relief ("PCR") under Alaska Criminal Rule 35.1 in which he alleged that trial counsel was ineffective because he waived the previously-noticed self-defense claim in pre-trial pleadings. Counsel was appointed and an amended PCR application was filed based on counsel's waiver, abandonment, and untimely subsequent request of a self-defense instruction. Lapitre submitted an affidavit in support of the PCR application, and trial counsel provided an affidavit in response to the claims. The trial court conducted an evidentiary hearing at which trial counsel and Lapitre testified. The court ultimately denied the PCR application, concluding:

> Here, [trial counsel] made a reasoned, well thought out decision based on the evidence and his years of experience. He advised the court that he was not pursuing a self-defense case in order to avoid the introduction by the state of a recent, similar incident of gun violence by Lapitre. Additionally, Lapitre's own version of events contained admissions that may have negated self-defense, *i.e.*, that Lapitre might be considered the initial aggressor and had ample opportunity to retreat. [Counsel] saw many downsides to asserting self-defense for Lapitre when accidental discharge fit better with the explanation of events that Lapitre had provided [counsel]. Under these circumstances it cannot be said that all reasonably competent attorneys would have rejected the same trial strategy in favor of that now asserted by Lapitre in hindsight.

Docket No. 11-13 at 32.

Lapitre appealed the denial to the Alaska Court of Appeals. The appellate court unanimously affirmed the PCR court's denial in a reasoned, unpublished decision issued on February 6, 2019. *Lapitre v. State*, No. A-12396, 2019 WL 460082, at *2 (Alaska Ct. App. Feb. 6, 2019). Lapitre petitioned for review in the Alaska Supreme Court, which was summarily

-3-

denied on May 15, 2019.

Lapitre timely filed a *pro se* Petition for a Writ of Habeas Corpus to this Court. Docket No. 1 ("Petition"); *see* 28 U.S.C. § 2244(d)(1),(2). Briefing is now complete and the Petition is before the undersigned judge for adjudication.

## II. GROUNDS/CLAIMS

In his *pro se* Petition before this Court, Lapitre raises three grounds for relief. First, he Lapitre argues that his "conviction [was] obtained by the unconstitutional failure of the prosecution to acknowledge favorable evidence." Lapitre next alleges that the superior court erred in denying his post-conviction relief application based on the ineffective assistance of trial counsel. Finally, Lapitre argues that the jury did not properly credit the testimony of the defense's firearm expert.

## III. STANDARD OF REVIEW

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 28 U.S.C. § 2254(d), this Court cannot grant relief unless the decision of the state court was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," § 2254(d)(1), or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding," § 2254(d)(2). A state-court decision is contrary to federal law if the state court applies a rule that contradicts controlling Supreme Court authority or "if the state court confronts a set of facts that are materially indistinguishable from a decision" of the Supreme Court, but nevertheless arrives at a different result. *Williams v. Taylor*, 529 U.S. 362, 406 (2000). The term unreasonable is a common term in the legal world. The Supreme Court has cautioned, however, that the range of reasonable judgments may depend in part on the nature of the relevant rule argued to be clearly established federal law. *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004) ("[E]valuating whether a rule application was unreasonable requires considering the rule's specificity. The more general the rule, the more leeway courts have in reaching outcomes in case-by-case

determinations.").

The Supreme Court has explained that "clearly established Federal law" in § 2254(d)(1) "refers to the holdings, as opposed to the dicta, of [the Supreme Court] as of the time of the relevant state-court decision." *Id.* at 412. The holding must also be intended to be binding upon the states; that is, the decision must be based upon constitutional grounds, not on the supervisory power of the Supreme Court over federal courts. *Early v. Packer*, 537 U.S. 3, 10 (2002). Where holdings of the Supreme Court regarding the issue presented on habeas review are lacking, "it cannot be said that the state court 'unreasonabl[y] appli[ed] clearly established Federal law.'" *Carey v. Musladin*, 549 U.S. 70, 77 (2006) (citation omitted).

To the extent that the Petition raises issues of the proper application of state law, they are beyond the purview of this Court in a federal habeas proceeding. *See Swarthout v. Cooke*, 131 S. Ct. 859, 863 (2011) (per curiam) (holding that it is of no federal concern whether state law was correctly applied). It is a fundamental precept of dual federalism that the states possess primary authority for defining and enforcing the criminal law. *See, e.g.*, *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991) (a federal habeas court cannot reexamine a state court's interpretation and application of state law); *Walton v. Arizona,* 497 U.S. 639, 653 (1990) (presuming that the state court knew and correctly applied state law), *overruled on other grounds by Ring v. Arizona*, 536 U.S. 584 (2002).

In applying these standards on habeas review, this Court reviews the "last reasoned decision" by the state court. *See Robinson v. Ignacio,* 360 F.3d 1044, 1055 (9th Cir. 2004) (citing *Avila v. Galaza*, 297 F.3d 911, 918 (9th Cir. 2002)). A summary denial is an adjudication on the merits and entitled to deference. *Harrington v. Richter*, 562 U.S. 86, 99 (2011). Under the AEDPA, the state court's findings of fact are presumed to be correct unless the petitioner rebuts this presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003).

-5-

Case 3:19-cv-00168-JMK Document 16 Filed 12/03/19 Page 5 of 10

## IV. DISCUSSION

A.   *Sufficiency of the Evidence* (Grounds 1, 3)

In Ground 1, Lapitre contends that his conviction was obtained by the "unconstitutional failure of the prosecution to acknowledge favorable evidence." Lapitre similarly argues in Ground 3 that the jury did not accept "exculpatory evidence" in the form of defense firearm expert testimony that corroborated Lapitre's story that Brown was the initial aggressor and that the gun ejected during a struggle. Construing Lapitre's *pro se* Petition liberally, Lapitre's claims may raise the contention that his murder conviction is unsupported by legally-sufficient evidence.

As articulated by the Supreme Court in *Jackson*, the federal constitutional standard for sufficiency of the evidence is whether, "after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979) (emphasis in the original); *see McDaniel v. Brown*, 558 U.S. 120, 132-33 (2010) (reaffirming this standard). This Court must therefore determine whether the California court unreasonably applied *Jackson*. In making this determination, this Court may not usurp the role of the finder of fact by considering how it would have resolved any conflicts in the evidence, made the inferences, or considered the evidence at trial. *Jackson*, 443 U.S. at 318-19. Rather, when "faced with a record of historical facts that supports conflicting inferences," this Court "must presume–even if it does not affirmatively appear in the record–that the trier of fact resolved any such conflicts in favor of the prosecution, and defer to that resolution." *Id.* at 326.

It is a fundamental precept of dual federalism that the States possess primary authority for defining and enforcing the criminal law. *See Engle v. Isaac*, 456 U.S. 107, 128 (1982). Consequently, although the sufficiency of the evidence review by this Court is grounded in the Fourteenth Amendment, it must take its inquiry by reference to the elements of the crime as set forth in state law. *Jackson*, 443 U.S. at 324 n.16. A fundamental principle of our federal system

is "that a state court's interpretation of state law, including one announced on direct appeal of the challenged conviction, binds a federal court sitting in habeas corpus." *Bradshaw v. Richey*, 546 U.S. 74, 76 (2005); *see West v. AT&T*, 311 U.S. 223, 236 (1940) ("[T]he highest court of the state is the final arbiter of what is state law. When it has spoken, its pronouncement is to be accepted by federal courts as defining state law . . . ."). "Federal courts hold no supervisory authority over state judicial proceedings and may intervene only to correct wrongs of constitutional dimension." *Sanchez-Llamas v. Oregon*, 548 U.S. 331, 345 (2006) (quoting *Smith v. Philips*, 455 U.S. 209, 221 (1982)) (internal quotation marks omitted).

Under *Jackson*, this Court's role is simply to determine whether there is any evidence, if accepted as credible by the trier of fact, sufficient to sustain conviction. *Schlup v. Delo*, 513 U.S. 298, 330 (1995). The United States Supreme Court has recently even further limited a federal court's scope of review under *Jackson*, holding that "a reviewing court may set aside the jury's verdict on the ground of insufficient evidence only if no rational trier of fact could have agreed with the jury." *Cavazos v. Smith*, 565 U.S. 1, 2 (2011) (per curiam). *Jackson* "makes clear that it is the responsibility of the jury—not the court—to decide what conclusions should be drawn from evidence admitted at trial." *Id*. Under *Cavazos*, "a federal court may not overturn a state court decision rejecting a sufficiency of the evidence challenge simply because the federal court disagrees with the state court. The federal court instead may do so only if the state court decision was 'objectively unreasonable.'" *Id.* (quoting *Renico v. Lett*, 559 U.S. 766, 773 (2010)).

Lapitre argues in his Petition that the evidence did not conclusively establish that he was the initial aggressor and points to weaknesses in the prosecution's case and inconsistencies presented at trial. But all of the evidence in support of his claim was before the jury for its assessment. This Court is precluded from re-weighing the evidence or re-assessing witness credibility. *Schlup*, 513 U.S at 330; *Bruce v. Terhune*, 376 F.3d 950, 957-58 (9th Cir. 2004). It is also well-settled under federal law that the testimony of even a single witness is sufficient to

support a conviction under the *Jackson* standard. *See, e.g.*, *Bruce*, 376 F.3d at 957-58 (testimony of single witness sufficient to uphold conviction under Jackson); *United States v. McClendon*, 782 F.2d 785, 790 (9th Cir. 1986). Furthermore, "[c]ircumstantial evidence and inferences drawn from it may be sufficient to sustain a conviction." *Walters v. Maass*, 45 F.3d 1355, 1358 (9th Cir. 1995) (citation and internal quotation marks omitted); *see also Jones v. Wood*, 207 F.3d 557, 563 (9th Cir. 2000) (evidence may be found sufficient to support conviction even where it "was almost entirely circumstantial and relatively weak," and fact that reviewing court may have reached different result or have reasonable doubt not enough to overcome *Jackson's* "high standard").

Although it might have been possible to draw a different inference from other evidence, this Court is required to resolve that conflict in favor of the prosecution. *See Jackson*, 443 U.S. at 326. Lapitre bears the burden of establishing by clear and convincing evidence that these factual findings were erroneous. 28 U.S.C. § 2254(e)(1). He has failed to carry such burden. The record does not compel the conclusion that no rational trier of fact could have believed the prosecution's theory of the case, especially considering the double deference owed under Jackson and AEDPA. *See Valdez v. Clark*, 587 F. App'x 414, 414-25 (9th Cir. 2014). Lapitre is therefore not entitled to relief on either of these grounds.

B. *Denial of Post-Conviction Relief/Ineffective Assistance of Trial Counsel* (Ground 2)

Lapitre additionally claims that the superior court erred in denying his PCR application based on the alleged ineffective assistance of trial counsel. The Court of Appeal upheld the denial of Lapitre's PCR application as follows:

> We agree with the superior court that Lapitre did not meet his burden of establishing that his counsel's choice of trial strategy was incompetent. As the superior court concluded below, Butler "made a reasoned, well thought out decision based on the evidence and his years of experience." Butler explained that he was not pursuing a self-defense case in order to avoid introduction by the State of a recent, similar incident of gun violence by Lapitre. The superior court also noted that Butler was concerned that Lapitre's own version of events contained admissions that "may have negated self-defense, *i.e.*, that Lapitre might be considered the initial aggressor and had ample opportunity to retreat."
> We acknowledge that another defense attorney might have chosen to go forward

-8-

with the combination self-defense/accidental discharge theory articulated by Lapitre in his post-conviction relief pleadings.[FN6] But having independently reviewed the record, we agree with the superior court's conclusion that "[u]nder these circumstances it cannot be said that all reasonably competent attorneys would have rejected [counsel's] trial strategy in favor of that now asserted by Lapitre in hindsight."

> FN6. *See Gottschalk* [*v. State*], 881 P.2d [1139,] 1143-44 [(Alaska App. 1994) (recognizing a similar hybrid claim of self-defense and accident)].

*Lapitre*, 2019 WL 460082, at *2.

Lapitre fares no better on federal habeas review. To demonstrate ineffective assistance of counsel under *Strickland v. Washington*, a defendant must show both that counsel's performance was deficient and that the deficient performance prejudiced his defense. 466 U.S. 668, 687 (1984). A deficient performance is one in which "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed by the Sixth Amendment." *Id.*

The Supreme Court has explained that, if there is a reasonable probability that the outcome might have been different as a result of a legal error, the defendant has established prejudice and is entitled to relief. *Lafler v. Cooper*, 132 S. Ct. 1376, 1385-86 (2012); *Glover v. United States*, 531 U.S. 198, 203-04 (2001); *Williams*, 529 U.S. at 393-95. Where a habeas petition governed by AEDPA alleges ineffective assistance of counsel, the *Strickland* prejudice standard is applied and federal courts do not engage in a separate analysis applying the *Brecht* harmlessness standard. *Avila v. Galaza*, 297 F.3d 911, 918, n.7 (9th Cir. 2002); *see also Musalin v. Lamarque*, 555 F.3d 830, 834 (9th Cir. 2009). Under this rubric, in reviewing ineffective assistance of counsel claims in a federal habeas proceeding:

> The question "is not whether a federal court believes the state court's determination" under the *Strickland* standard "was incorrect but whether that determination was unreasonable—a substantially higher threshold." And, because the *Strickland* standard is a general standard, a state court has even more latitude to reasonably determine that a defendant has not satisfied that standard.

*Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009) (citations omitted); *see also Runningeagle v. Ryan*, 686 F.3d 758, 775 (9th Cir. 2012).

Thus, Lapitre must show that his trial counsel's representation was not within the range of competence demanded of attorneys in criminal cases, and there is a reasonable probability

that, but for counsel's ineffectiveness, the result would have been different. *See Hill v. Lockhart,* 474 U.S. 52, 57 (1985). An ineffective assistance of counsel claim should be denied if the petitioner fails to make a sufficient showing under either of the *Strickland* prongs. *See Strickland*, 466 U.S. at 697 (courts may consider either prong of the test first and need not address both prongs if the defendant fails on one).

Lapitre fails to satisfy this heavy burden. The Court of Appeals' determination is both reasonable and fully supported by the record. For the reasons persuasively articulated by the Court of Appeals, Lapitre fails to demonstrate that counsel was ineffective, and he is not entitled to relief on this ground either.

## V. CONCLUSION AND ORDER

Lapitre is not entitled to relief on any ground raised in his Petition.

**IT IS THEREFORE ORDERED THAT** the Petition under 28 U.S.C. § 2254 for Writ of Habeas Corpus is **DENIED**.

**IT IS FURTHER ORDERED THAT** the Court declines to issue a Certificate of Appealability. *See* 28 U.S.C. § 2253(c); *Banks v. Dretke*, 540 U.S. 668, 705 (2004) ("To obtain a certificate of appealability, a prisoner must 'demonstrat[e] that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further.'" (quoting *Miller-El*, 537 U.S. at 327)). Any further request for a Certificate of Appealability must be addressed to the Ninth Circuit Court of Appeals. *See* FED. R. APP. P. 22(b); 9TH CIR. R. 22-1.

The Clerk of the Court is to enter judgment accordingly.

Dated: December 3, 2019.

                                          /s/ James K. Singleton, Jr.
                                          JAMES K. SINGLETON, JR.
                                          Senior United States District Judge